# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH ANNIE WILLIAMS, | Case No. 1:22-cv-01103-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |
| _____/ | |

## I.    INTRODUCTION

Plaintiff Deborah Annie Williams ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    BACKGROUND

Plaintiff was born on December 26, 1965, and was 51 years old as of the application date in the current case.  (Administrative Record ("AR") 27, 33, 133, 144, 428, 441, 449.)  She has a high school education.  (AR 33, 53, 433.)

In a decision dated December 10, 2015, an ALJ rejected Plaintiff's prior application for SSI

---

[1]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 12.)

1  payments, assessing a residual functional capacity ("RFC")[2] of medium work with additional

2  reaching restrictions.  (AR 111–20.)

3      On October 16, 2017, Plaintiff again applied for SSI payments, initially alleging she became

4  disabled on July 15, 2012, due to diabetes, high cholesterol, shoulder problems, carpal tunnel,

5  vision problems, high blood pressure, and arthritis.  (AR 24, 134, 145, 187, 428, 432, 441.)  Her

6  alleged onset date was amended to October 16, 2017, the application date.  (AR 24, 50, 90.)

7      Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on

8  November 21, 2019, finding Plaintiff not disabled.  (AR 158–68.)  Plaintiff appealed the decision

9  to the Appeals Council, who vacated the decision and remanded the case for further proceedings.

10  (AR 23, 173–76.)  The ALJ thereafter conducted another hearing and issued a new written decision

11  once again finding Plaintiff not disabled.  (AR 84–107, 20–42.)

12  **A.      Relevant Medical Evidence of Record[3]**

13      An x-ray of Plaintiff's lumbar spine performed in October 2017 showed trace degenerative

14  changes of the lumbar spine, but no acute fracture or dislocation.  (AR 523, 526, 530.)  In August

15  2020, Plaintiff reported experiencing mid low back pain with no radiation.  (AR 997.)  Upon

16  physical examination, Plaintiff had normal range of motion in her neck. (AR 999.)  She was

17  prescribed Naproxen, as the provider recommended "[c]onservative management" of back pain.

18  (AR 1001.)

19      Plaintiff presented for a follow-up appointment for right shoulder pain in March 2019.  (AR

20  753–78.)  She reported walking two to three times per week for exercise.  (AR 763.)

21      In November 2020, consultative examiner Robert Wagner, M.D., performed a

22  comprehensive internal medicine evaluation of Plaintiff, who complained of diabetes, right

23

---

24  [2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work
    setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES

25  II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p
    (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an

26  individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's
    RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and

27  'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"
    *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

28  [3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the
    contested issues.

shoulder pain, right carpal tunnel syndrome, and right knee pain.  (AR 983–88.)  Plaintiff reported that she cooks, cleans, drives, shops, performs her own activities of daily living without assistance, and walks some for exercise.  (AR 984.)  Dr. Wagner observed that Plaintiff "was easily able to get up from a chair in the waiting room and walk at a normal speed back to the examination room without assistance."  (AR 984.)  She "was easily able to get on and off the exam table, easily able to bend at the waist to take off shoes and socks and put them back on, demonstrating good dexterity and good flexibility, perhaps using the left hand a bit more than the right when dealing with her footwear and clothing."  (AR 984–85.) Dr. Wagner found Plaintiff's "dexterity is good," as she was "easily able to oppose fingertips to thumb tips and pick up a paperclip.  (AR 985.)  She also was able to make a fist with each hand.  (AR 985.)  Plaintiff had an "equivocal" Tinel's test on the right wrist, negative on the left wrist, and negative Phalen's test bilaterally.  (AR 985.)

Dr. Wagner observed Plaintiff "was easily able to walk on toes and heels" and demonstrated normal station and a normal gait.  (AR 986.) Her knee extension was zero degrees and flexion was 150 degrees bilaterally.  (AR 986.) Examination of the knees found no swelling, tenderness, effusion, or crepitus. (AR 987.) Sensation was grossly intact to light touch and pinprick throughout Plaintiff's bilateral upper and lower extremities.  (AR 987.)  She demonstrated some decreased range of motion of the right shoulder, but her strength was "well maintained."  (AR 987.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on January 5, 2018, and again on reconsideration on March 6, 2018.  (AR 158, 179–83, 187–93.) Following a hearing on November 6, 2019 (AR 43–83), an ALJ issued a written decision on November 18, 2019, finding Plaintiff not disabled.  (AR 155–72.)  Plaintiff appealed the decision to the Appeal Council, who, on June 1, 2020, remanded the case for further proceedings.  (AR 23, 173–76.) Upon remand, the Appeals Council directed the assigned ALJ to offer Plaintiff the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision.  (AR 175.)

On April 19, 2021, Plaintiff appeared with a non-attorney representative and testified before the ALJ as to her alleged disabling conditions.  (AR 91–101.)  A vocational expert also testified.

1  (AR 101–106.)

2  **1.  Plaintiff's Testimony**

3  Plaintiff testified she has a driver's license and, although she doesn't drive often, she drives

4  within Bakersfield to places she needs to go, such as the pharmacy.  (AR 94.)  She complained of

5  problems with the trigger finger on her right hand.  (AR 95–96.)  Plaintiff also testified that she

6  experienced chronic pain in her neck and lower back.  (AR 96–97.)  According to Plaintiff, she has

7  not gone on walks, been to a grocery store, attended a community event, or attended church since

8  applying for SSI benefits in October 2017.  (AR 97.)  She testified she spends the day in bed or

9  lying on the couch, and does not do the physical exercise prescribed by her medical providers.  (AR

10  97.)

11  According to Plaintiff, since her carpal tunnel release surgery in January 2018, chronic pain

12  in her neck and lower back caused her to have difficulty sitting, standing up, or walking.  (AR 98.)

13  She testified she could not reach overhead, but she could reach in front of herself.  (AR 99.)  She

14  testified she could not lift or carry anything, and she lay down more than half the day.  (AR 99–

15  100.)  Plaintiff described difficulty opening jars, and problems putting on shoes and socks

16  independently.  (AR 100.)

17  Plaintiff testified about her earning records, from which the ALJ concluded that Plaintiff had

18  no past relevant work.  (AR 92.)

19  **2.  Vocational Expert's Testimony**

20  A vocational expert ("VE") testified at the hearing, and was asked to consider a hypothetical

21  person aged 51 with a high school education, no past relevant work, and the following limitations:

22  the individual can lift or carry occasionally 50 pounds, frequently can lift or carry 20 pounds, and

23  can lift up to 10 pounds continuously.  (AR 102.)  The individual can occasionally climb ladders,

24  ropes or scaffolding; frequently climb ramps or stairs; and can stand or walk up to six hours of an

25  eight-hour workday with normal breaks.  (AR 102.)  With the right upper extremity, the individual

26  can occasionally reach overhead and can frequently push or pull.  (AR 103.)  Lastly, the individual

27  can operate foot pedals on a motor vehicle frequently.  (AR 103.)  The VE testified that such

28  individual could perform certain jobs in national economy, such as kitchen helper, DOT code

4

318.687-010, medium exertional work with a specific vocational preparation (SVP)[4] of 2; hand packager, DOT code 920.587-018, medium exertional work with an SVP of 2; and hospital cleaner, DOT code 323.687-010, medium exertional work with an SVP of 2.  (AR 103.)

The ALJ asked, in a second hypothetical, whether there would be work in the national economy for an individual who cannot, on a consistent basis, lift up to nine pounds during the day and who is anticipated to miss four days of work a month.  (AR 104.)  The VE responded that such there would be no work for such an individual, due to the level of absenteeism.  (AR 104.)  In a third hypothetical, the ALJ asked the VE whether adding a limitation of no exposure to pulmonary irritants, dust, and mold would change the VE's prior answer, and they responded that such limitation would eliminate the kitchen helper job, but not the others.  (AR 104–05.)

Plaintiff's counsel asked the VE whether the individual in the third hypothetical, with the addition of a limitation to occasional handling and fingering, could perform any work in the national economy.  (AR 105.)  The VE testified there would be no work such a person could perform.  (AR 105.)  The VE also testified that a limitation to light work with a "sit/stand" option would also eliminate all work.  (AR 105–106.)

**C.     The ALJ's Decision**

In a decision dated July 28, 2021, the ALJ again found Plaintiff not disabled.  (AR 23–35.) The ALJ first determined that Plaintiff had rebutted the "presumption of continuing non-disability" arising from the ALJ's prior finding of non-disability in 2015, established by the Ninth Circuit case *Chavez v. Bowen*, because Plaintiff had shown "changed circumstances," specifically "two changes in [Plaintiff's] age category since [the] previous decision."  (AR 26–27 (citing *Chavez v. Bowen*, 844 F.2d 691 (1988) and Social Security Acquiescence Ruling ("SS AR"), 97-4(9).)

The ALJ then proceeded to conduct the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 27–35.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since October 16, 2017, the application date (step one).  (AR 27.)  At step two, the ALJ

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

1   found Plaintiff's following impairments to be severe: bilateral carpal tunnel syndrome; diabetes

2   mellitus; right shoulder tendinitis; hypertension; and obesity.  (AR 27–29.)  Plaintiff did not have

3   an impairment or combination of impairments that met or medically equaled one of the listed

4   impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 29.)

5        The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five.

6   *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual

7   functional capacity . . . . We use this residual functional capacity assessment at both step four and

8   step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the

9   RFC:

10           to perform medium work as defined in 20 CFR [§] 416.967(c) except she: is able
             to lift or carry 50 pounds occasionally, 20 pounds frequently, and up to 10 pounds
11           continuously; can stand or walk up to 6 hours of an 8-hour workday, with normal
             breaks; has no sitting limitations; can occasionally climb ladders, ropes, and
12           scaffolding; can frequently climb ramps and stairs; can occasionally reach overhead
             with the right upper extremity; can frequently push or pull with the right upper
13           extremity; and can frequently operate pedals on a motor vehicle.
14

15   (AR 30–33.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be

16   expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as

17   "not entirely consistent with the medical evidence and other evidence in the record for the reasons

18   explained in this decision."  (AR 31.)

19        The ALJ determined that Plaintiff had no past relevant work (step four) but that, given her

20   RFC, she could perform a significant number of other jobs in the local and national economies,

21   specifically kitchen helper, hand packager, and hospital cleaner (step five).  (AR 33–34.)  The ALJ

22   concluded Plaintiff was not disabled since October 16, 2017, the date the application was filed.

23   (AR 34–35.)

24        Plaintiff sought review of this decision before the Appeals Council, which denied review

25   on July 13, 2022.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the

26   Commissioner.  20 C.F.R. § 416.1481.

27

28

6

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to

the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.      Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id*.; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.

2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.     DISCUSSION

Plaintiff asserts that the ALJ erred by adopting a less restrictive RFC than previously determined in the absence of new and material evidence, in violation of *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).  (Doc. 14 at 11–15.; Doc. 18 at 2–4.)  Plaintiff further asserts that the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's testimony.  (Doc. 14 at 15–19; Doc. 18 at 4–7.)  The Court takes each argument in turn, and finds that remand is not warranted in this case.

### A.     The ALJ Did Not Harmfully Err in Declining to Adopt The ALJ's Prior RFC Determination

#### 1.     Legal Standard

In cases involving a prior final agency decision of nondisability where the claimant subsequently files a new application for benefits, the prior administrative decision triggers a presumption of continuing nondisability.  *Chavez v. Bowen*, 844 F.2d 691, 693–64 (9th Cir. 1988) (where ALJ made "no reference" to prior ALJ's decision and "failed to consider the first judge's findings," the "principles of res judicata made binding the first judge's determination").  To overcome this presumption of continuing nondisability, the claimant "must prove 'changed circumstances' indicating a greater disability."  *Id.* (because the defendant failed to identify "new" information that "had not been presented to the first" ALJ, it was error for the second ALJ to have "reopened the prior [ALJ's] determinations concerning the claimant's ability to perform his past relevant work") (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)); *cf. Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1172–73 (9th Cir. 2008) (where "[t]he entirety of the medical evaluations presented with respect to the [claimant's] present application were conducted after [claimant's] initial disability determination [,] [t]hese evaluations necessarily presented new and material information not presented to the first ALJ") (applying *Chavez* ).

Social Security Acquiescence Ruling 97–4(9) provides guidance on the *Chavez* decision:
In order to rebut the presumption of continuing nondisability, a claimant must prove "changed circumstances" indicating a greater disability.  In addition, the court [in

9

1
2
3
4
5

> *Chavez* ] indicated that where the claimant rebuts the presumption by proving a changed circumstance, principles of res judicata require that certain findings contained in the final decision by the ALJ on the prior claim must be given some res judicata consideration in determining whether the claimant is disabled . . . The court concluded that where the final decision on the prior claim, which found the claimant not disabled, contained findings of the claimant's residual functional capacity, education, and work experience, [the agency] may not make different finding in adjudicating the subsequent disability unless there is new and material evidence . . .

6   SS AR 97-4(9), 1997 WL 742758, at *2–*3. ).[5]  Although the presence of additional impairments

7   rebuts the general presumption of nondisability, that alone is insufficient to rebut the specific

8   findings of the prior decision.  *Chavez*, 844 F.2d at 694.  Instead, there must be "new and material"

9   evidence relating to each finding.  *See* SS AR 97–4(9).

10        **2.    Analysis**

11        Here, the ALJ found that Plaintiff rebutted the general presumption of continuing

12   nondisability because "there have been two changes in [Plaintiff's] age category since [the ALJ's]

13   previous decision in December 2015." (AR 27).  Plaintiff does not challenge the ALJ's finding of

14   changed circumstances, but asserts the ALJ failed to identify any new and material evidence as

15   required to depart from their prior residual functional capacity determination.  The Court is not

16   persuaded.

17        In 2015, the ALJ assessed the following RFC:

18
19
20

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR [§] 416.967(e) except with the right major upper extremity no more than occasional over shoulder reaching and no more than frequent reaching in any other direction.

21   (AR 114.)  In the current decision, the ALJ eliminated the restriction of frequent reaching in any

22   other direction:

23
24
25

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR [§] 416.967(c) except she: is able to lift or carry 50 pounds occasionally, 20 pounds frequently, and up to 10 pounds continuously; can stand or walk up to 6 hours of an 8-hour workday, with normal breaks; has no sitting limitations; can

26
27
28

---

[5] Acquiescence Rulings are Social Security Administration policy statements issued in response to the Court of Appeals' holdings, and they "describe the administrative case and the court decision, identify the issue(s) involved, and explain how we will apply the holding, including, as necessary, how the holding relates to other decisions within the applicable circuit." 20 C.F.R. § 404.985(b).  They are binding on the Social Security Administration, 20 C.F.R. § 402.35(b)(2), and are accorded deference by reviewing courts.  *McNabb v. Barnhart*, 340 F.3d 943, 944–45 (9th Cir. 2003).

1   occasionally climb ladders, ropes, and scaffolding; can frequently climb ramps and
2   stairs; can occasionally reach overhead with the right upper extremity; can
    frequently push or pull with the right upper extremity; and can frequently operate
3   pedals on a motor vehicle.

4   (AR 20.)

5     Nearly all of the medical evidence that is part of the administrative record now under review

6   is from the period after June 2017, and post-dates the ALJ's prior decision. (*See* AR 510–1050).

7   The ALJ relied entirely on these new medical records and evaluations in adjudicating Plaintiff's

8   current application and assessing her residual functional capacity.  (AR 27–33).  The Ninth Circuit

9   has held that medical evaluations conducted after a prior adjudication necessarily constitute "new

10  and material information not presented to the first ALJ." *Stubbs-Danielson*, 539 F.3d at 1173 (9th

11  Cir. 2008); *Trofimuk v. Comm'r of Soc*. Sec., No. 2:12–cv–2482–KJN, 2014 WL 794343, at *5

12  (E.D. Cal. Feb. 27, 2014) (where the ALJ relies entirely on medical evaluations conducted after a

13  prior adjudication, the ALJ is not required to give the findings from the prior adjudication

14  preclusive effect).

15    In light of this new and material evidence, the Court finds the ALJ was not required to give

16  preclusive effect to their prior RFC finding and properly proceeded through the sequential

17  evaluation process.[6]

18  **B. The ALJ Did Not Err in Discounting Plaintiff's Testimony**

19    **1. Legal Standard**

20    The test for deciding whether to accept a claimant's subjective symptom testimony turns on

21

22  ───────────────

[6] Even if the ALJ had erred in not giving preclusive effect to the prior RFC determination, Plaintiff has failed to show
23  that such error is harmful.  *See Molina*, 674 F.3d at 1111 ("A decision of the ALJ will not be reversed for errors that
    are harmless.").  Had the ALJ had adopted the same reaching limitation as assessed in the 2015 decision, representative
24  occupations would still be available for Plaintiff to perform.  Plaintiff's change in age category since 2015 would not
    render her unable to perform the RFC identified in the 2015 decision.  Indeed, one of the representative occupations
25  identified in the 2015 decision, that of hospital cleaner, was also identified as a representative occupation in the current
    decision under review (*Compare* AR 34 *with* AR 119.  *See also* AR 103 (VE's testimony).)  As defined in the DOT,
26  this job requires no more than frequent reaching, and is therefore consistent with both the RFC identified in the 2015
    decision and the RFC identified in the current decision under review.  *See* Hospital Cleaner, U.S. DEP'T OF LABOR,
27  DICTIONARY OF OCCUPATIONAL TITLES, Job Code No. 323.687-010, 1991 WL 672782 (4th ed. rev. 1991).
    Accordingly, Plaintiff is unable to show that adoption of the reaching limitation in the 2015 RFC could have changed
28  the outcome of the decision. *See, e.g., Stubbs-Danielson*, 539 F.3d at 1174 (to the extent ALJ erred by omitting certain
    postural limitations from RFC, such error was harmless since sedentary work did not generally require such
    maneuvers).  *See also Tommasetti*, 533 F.3d at 1038.

whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the symptoms alleged.  *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1281–82 & n.2 (9th Cir. 1996).  The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence.  *Reddick*, 157 F.3d at 722*; Bunnell*, 947 F.2d at 343, 345.  If the ALJ finds the claimant's testimony not credible, the ALJ "must specifically make findings which support this conclusion."  *Bunnell*, 947 F.2d at 345.  The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell*, 947 F.2d at 345-46.  Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so."[7]  *Smolen*, 80 F.3d at 1283-84; *see also Reddick*, 157 F.3d at 722.  The ALJ must identify what testimony is not credible and what evidence discredits the testimony.  *Reddick*, 157 F.3d at 722; *Smolen*, 80 F.3d at 1284.

### 2.    Analysis

As noted above, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms.  (AR 31.) The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were "not entirely consistent" with the RFC.  (AR 31.)  Because the ALJ did not make any finding of malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom allegations.  *Smolen*, 80 F.3d at 1283-84; *Tommasetti*, 533 F.3d at 1039–40.  Here, the ALJ provided at least three valid reasons for discrediting Plaintiff's testimony.

### a.    Inconsistent Statements

One of the reasons the ALJ discredited Plaintiff's testimony was her inconsistent statements. (AR 31.)  An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's

---

[7] The Court disagrees with the Acting Commissioner that a lesser legal standard applies.  (*See* Doc. 17 at 11 n.5.)

1    reputation for lying, prior inconsistent statements concerning symptoms, and other testimony by the

2    claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.

3         Plaintiff testified that she has difficulty with grip and using her hands; that she cannot lift or

4    carry anything; that chronic pain in her neck and back causes her to have difficulty sitting, standing

5    up, and walking; and that she has not gone on walks, been to a grocery store, attended a community

6    event, or attended church since applying for SSI benefits in October 2017.  (AR 95–100.)  As the

7    ALJ pointed out (AR 30), however, Plaintiff also made statements to the contrary.  Despite her stated

8    difficulties with grip and using her hands, she testified at the hearing that she had a valid driver's

9    license and drove within Bakersfield as needed, including to the pharmacy.  (AR 94.  *See also* AR

10   984 (reporting that she drove and shopped).))  She also reported to Dr. Wagner in November 2020

11   that she walked for exercise, despite claiming that had not gone on a walk since October 2017.  (AR

12   984.  *See also* AR 763 (documenting March 2019 report of walking two to three times per week for

13   exercise).)  These types of inconsistent statements comprised a clear and convincing reason to

14   discount Plaintiff's credibility.  *Smolen*, 80 F.3d at 1284.  *See also, e.g.*, *Alonzo v. Colvin*, No. 1:14–

15   cv–00460–SKO, 2015 WL 5358151 at *17 (E.D. Cal. Sept. 11, 2015) (affirming discount by the

16   ALJ of Plaintiff's credibility due to inconsistent statements).

17        Despite bearing the burden of proving her disability, Plaintiff does not point to any evidence

18   demonstrating that she has limitations greater than those determined in the ALJ's decision.  *See*

19   *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (noting that claimant bears burden of proving

20   that she is disabled and must present "complete and detailed objective medical reports of her

21   condition from licensed medical professionals").  She does not challenge, for example, the ALJ's

22   consideration of the opined limitations by consultative examiner Dr. Wagner (AR 987), all of which

23   the ALJ incorporated in Plaintiff's RFC (AR 30).  While she obviously disagrees with the ALJ's

24   assessment of the medical record, Plaintiff fails to articulate exactly how the record supports her

25   belief that her impairments result in greater limitations than those found by the ALJ.

26        Instead, Plaintiff criticizes the ALJ's "general recitation of the evidence," suggesting that the

27   ALJ's reasoning is not sufficiently specific enough to be clear and convincing.  (*See* Doc. 14 at 18

28   (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).)  The Court finds, contrary to

1  Plaintiff's argument, that the ALJ cited to specific evidence, *e.g.*, ability to drive, shop, and walk for
2  exercise; lumbar spine imaging; observations of the consultative examiner, etc., and sufficiently
3  "linked" that evidence to that of Plaintiff's testimony it undermined, *e.g.*, that she had not gone for
4  a walk or to the grocery store since October 2017; that chronic pain in her neck and back causes her
5  to have difficulty sitting, standing up, and walking; that she has trouble gripping or using her hands.
6  (*See* AR 31.)

7              **b.      Inconsistency with the Medical Record**

8              The ALJ also found Plaintiff's testimony of extreme limitations to be inconsistent with the
9  medical record, specifically the "extremely mild findings on imaging of her lumbar spine" and the
10  "lack of any imaging of her cervical spine," as well as the "professional observations of the
11  consultative examining physician," Dr. Wagner.  (AR 31.)

12             An ALJ may not reject a claimant's subjective complaints based solely on a lack of medical
13  evidence to fully corroborate the alleged severity of [the impairment]."  *Burch*, 400 F.3d at 680.
14  Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in [their] credibility
15  analysis."  *Burch*, 400 F.3d at 681.  *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004);
16  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Stated differently,
17  "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason
18  for rejecting subjective complaints of pain, it is one factor which may be considered with others."
19  *Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014)
20  (citations omitted).

21             Here, as noted by the ALJ (AR 31), objective imaging of Plaintiff's lumbar spine showed
22  only trace degenerative changes of the lumbar spine, but no acute fracture or dislocation.  (AR 523,
23  526, 530.)  At the consultative examination, as the ALJ discussed (AR 31), Dr. Wagner observed
24  that Plaintiff "was easily able to get up from a chair in the waiting room and walk at a normal speed
25  back to the examination room without assistance."  (AR 984.)  She "was easily able to get on and
26  off the exam table, easily able to bend at the waist to take off shoes and socks and put them back on,
27  demonstrating good dexterity and good flexibility, perhaps using the left hand a bit more than the
28  right when dealing with her footwear and clothing."  (AR 984–85.)  Upon examination, Plaintiff

"was easily able to walk on toes and heels" and demonstrated normal station and a normal gait.  (AR 986.)  Her knee extension was zero degrees and flexion was 150 degrees bilaterally.  (AR 986.) Examination of the knees found no swelling, tenderness, effusion, or crepitus. (AR 987.)  Sensation was grossly intact to light touch and pinprick throughout Plaintiff's bilateral upper and lower extremities.  (AR 987.)  She demonstrated some decreased range of motion of the right shoulder, but her strength was "well maintained."   Dr. Wagner found Plaintiff's "dexterity is good," as she was "easily able to oppose fingertips to thumb tips and pick up a paperclip. (AR 985.)  She also was able to make a fist with each hand.  (AR 985.)

The Court finds the ALJ's conclusion that the evidentiary record does not support, and in fact undermines, Plaintiff's subjective statements is supported by substantial evidence.  The ALJ's determination that Plaintiff's complaints are inconsistent with the objective medical evidence is therefore a clear and convincing reason for discounting her subjective symptom testimony.  *See Molina*, 674 F.3d at 1113 (concluding that the ALJ properly discredited claimant testimony based on inconsistencies with objective medical evidence).; 20 C.F.R. § 416.929(c)(3).

### c.    Activities of Daily Living

Finally, the ALJ noted that Plaintiff's allegations of extreme limitations are inconsistent with her activities of daily living.  (AR 31.)  As discussed by the ALJ, the record contains reports of Plaintiff's ability to cook, clean, shop, perform her own activities of daily living without assistance, and, as discussed above, walk for exercise and drive.  (*See* AR 94, 763, 984.)

An ALJ may properly consider a claimant's daily activities when evaluating credibility.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when evaluating credibility).   Moreover, in evaluating a claimant's credibility, an ALJ may consider inconsistencies between the claimant's testimony and the claimant's conduct and whether the claimant engages in daily activities inconsistent with the alleged symptoms.  *Molina*, 674 F.3d at 1112.   Even where those activities suggest some difficulty functioning, they are grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment.  *Id.* at 1113.

The Court finds that the above-described activities tend to suggest, as the ALJ concluded,

that Plaintiff may still be able to perform, on a sustained basis, the basic demands of the representative occupations identified by the ALJ (*see* AR 34). *See Fair*, 885 F.2d at 603 (finding that if a claimant has the ability to perform activities "that involved many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from working"); *see also, e.g., Stubbs-Danielson*, 539 F.3d at 1175 (finding that the ALJ sufficiently explained their reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband managing finances); *Morgan*, 169 F.3d at 600 (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility); *Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly made an adverse credibility finding because, in part, claimant's daily activities included driving, washing the dishes, shopping, and caring for her two children); *Nelson v. Colvin*, No. 1:15-cv-00696-SKO, 2016 WL 3407627, at *20 (E.D. Cal. June 20, 2016) (ALJ properly discredited subjective complaints of claimant who suffered from chronic back problems where claimant engaged in activities such as preparing simple meals, washing dishes, driving a car, shopping for groceries and household supplies 2–3 times a week, walking up to a mile, using a computer for about half an hour at a time, visiting with family, mopping and vacuuming, independently handling her own finances, and doing yoga tapes at home.).

The ALJ's decision recognized that Plaintiff has some work limitations because of her impairments, including limitations beyond what was found in 2015. (Compare AR 20 with AR 114. See AR 30, 32, 33 (incorporating the limitations opined by Dr. Wagner in Plaintiff's RFC). *See also* AR 33 (rejecting the state agency consultant's opinions because "neither doctor considered the claimant's carpal tunnel syndrome, diabetes mellitus, and reported numbness and tingling in the arms as well as difficulties with the third digit on the right hand.").) The Court concludes that the ALJ properly discredited Plaintiff's testimony that her limitations render her ***completely*** unable to work, however. *Fair*, 885 F.2d at 604; *see also Bunnell*, 947 F.2d at 346 ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's

allegations based on inconsistencies in the testimony or on relevant character evidence.").  Where the ALJ makes a reasonable interpretation of Plaintiff's testimony, it is not the Court's role to second-guess it.  *Rollins*, 261 F.3d at 857 (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all the activities and noting that the ALJ's interpretation "may not be the only reasonable one").  *See also Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential").

In sum, the Court finds the ALJ discounted Plaintiff's testimony for at least three clear and convincing reasons supported by substantial evidence.

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **September 20, 2023**              */s/ Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE